UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| David B. Turner Jr.,<br><br>                              Plaintiff,<br><br>v.<br><br>County of San Diego,<br><br>                              Defendant. | Case No.:  14-cv-02003-JAH-JLB<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 63]** |

The Court submits this Report and Recommendation to United States District Judge John A. Houston pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California.  After a thorough review of Defendant County of San Diego's motion for summary judgment (ECF No. 63), Plaintiff's verified First Amended Complaint and oppositions to summary judgment (ECF Nos. 6, 80, 83), and Defendant County of San Diego's reply (ECF No. 84), this Court **RECOMMENDS** Defendant County of San Diego's motion for summary judgment (ECF No. 63) be **GRANTED**.

I.   **Procedural History**

Defendant County of San Diego is the only remaining defendant in this case.[1] Plaintiff sues the County under 42 U.S.C. §§ 1983, 1985, and 1986 for alleged violations of and conspiracies to violate his Fourth, Sixth, Eighth, and Fourteenth Amendment rights.

---

[1] On September 14, 2015, the Court dismissed Sheriff William D. Gore, Sergeant Farris, and Deputy Hernandez.  (ECF No. 48.)  On November 2, 2015, the Court granted the State's motion to dismiss and dismissed Plaintiff's claims against the State.  (ECF No. 55.)

Plaintiff also alleges Defendant is liable for Plaintiff's injuries under California Government Code, sections 815.2, 815.6, 820, 844.6, 910, 912(c), and 950.

On January 15, 2016, the County moved for summary judgment. (ECF No. 63). On March 14, 2016, Plaintiff filed an opposition to Defendant's pending motion for summary judgment which restated Plaintiff's allegations, but which was devoid of evidence in any form. (ECF No. 80.) On March 25, 2016, Magistrate Judge Jill L. Burkhardt issued a *Klingele/Rand* Notice Warning Order, advising Plaintiff as follows:

> **This notice is required to be given to you, David B. Turner Jr., pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988):**
>
> The Defendant filed a Motion for Summary Judgment by which it seeks to have your case dismissed. (ECF No. 63.) A Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a Motion for Summary Judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact and the law – based on those facts – supports the request for judgment. In other words, if there is no real dispute about any fact that would affect the result of your case, and the party who asked for summary judgment is entitled to judgment as a matter of law, summary judgment will be granted and your case will end. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts from declarations, depositions, answers to interrogatories, or authenticated documents, as provided by Rule 56(e), that contradict the facts shown in the Defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.
>
> On March 14, 2016, you filed an opposition to Defendant's pending motion for summary judgment. (ECF No. 80.) Your opposition fails to set out specific facts from declarations, depositions, answers to interrogatories, or authenticated documents, as provided by Rule 56(e), that contradict the

facts shown in the Defendant's declarations and documents and show that there is a genuine issue of material fact for trial.

Accordingly, on the Court's own motion, **IT IS ORDERED** that, on or before **April 22, 2016**, you may file a Supplemental Opposition to Defendant's Motion for Summary Judgment that sets out specific facts from declarations, depositions, answers to interrogatories, or authenticated documents, as provided by Rule 56(e), that you contend contradict the facts shown in the declarations and documents filed by Defendant in support of its motion for summary judgment and that you contend show that there is a genuine issue of material fact for trial. Your Opposition (including any supporting documents) must be filed and served on all parties by April 22, 2016.

(ECF No. 82 (emphasis in original).)

On April 4, 2016, Plaintiff filed a supplemental opposition to Defendant's motion for summary judgment, to which he attached unauthenticated evidence. (ECF No. 83.) On May 12, 2016, Defendant filed its reply. (ECF No. 84.)

## II.    Factual Background

Plaintiff David B. Turner Jr., a former prisoner proceeding *pro se*, brought this action arising from a December 3, 2013 incident in which Sheriff's deputies allegedly used excessive force against him while he was a prisoner in San Diego County's George Bailey Detention Facility ("GBDF"). A GBDF Incident Report reflects that the incident in question occurred during a weekly laundry exchange in Plaintiff's housing unit. (ECF No. 83 at 4.) The parties' accounts diverge on what happened during the laundry exchange. Plaintiff's account (to the extent it diverges from Defendant's account) is supported by allegations in and evidence attached to his verified First Amended Complaint ("FAC") only, whereas Defendant's account is supported by evidence filed in connection with its motion for summary judgment.

Among Defendant's evidence is a GBDF Officer Report completed by Corporal Gardiner,[2] which reports the following with respect to the December 3, 2013 laundry exchange incident:

> All inmates were instructed via the intercom to remove all clothing with the exception of a blanket wrapped around their waist in order to complete the one for one clothing exchange as scheduled.
>
> At approximately 2230 hours, I approached Cell 202 to conduct a search of the occupants for extra clothing and contraband.  In order to complete the search of the inmate's person, I instructed the inmates to open the side of their blanket, so I could assure that there were no hidden items under the blanket and to afford the inmate privacy.
>
> The first occupant exited the cell door and complied with all my instructions.  Turner then came to the cell door and I instructed him to open the side of his blanket.  To this Turner replied, "Fuck you I ain't on that gay shit!" I instructed Turner that the search was not optional and Turner still continued to refuse stating, "I ain't got nothing on!"  I then explained to Turner that I could not take his word and I needed to see myself.
>
> Turner continued to refuse to follow my orders and became confrontational calling me [] several derogatory terms commonly used [to] describe a homosexual.  At this point I instructed Turner to face the back of the cell.  Turner complied and I entered the cell and placed Turner in handcuffs.  Due to his boisterous behavior, Turner was then escorted out of the module by Corporal Hernandez (5690), Deputy Bennetts (6285), Deputy L. Garcia (3310) and I.
>
> As Turner passed other deputies, Turner looked at Corporal Hernandez and stated, "Whatcha looking at? I'm gonna knock you the fuck out." I escorted Turner to GBDF Processing Cell 104.
>
> Once inside the cell, I instructed Turner to face the wall, put his knees on the bench and cross his ankles, so I could remove the handcuffs while Turner was at a position of disadvantage.  To this Turner complied.  I instructed Turner once the handcuffs are removed he need[ed] to place his hands high on the wall. To this Turner complied. I told Turner to stay in that

---

[2] Corporal Gardiner's report was also attached as an exhibit to Plaintiff's supplemental opposition to Defendant's motion for summary judgment.

position until the door is secured.  To this Turner replied, "Ok."  As we released are grasp of Turner in an attempt to safely exit the cell, Turner violently and aggressively turned around without being told to do so and faced us.  I perceived Turner's actions as an attempt to assault us.  In order to prevent Turner from assaulting us, I grabbed Turner's left arm above and below his elbow and held it in place.  Once I grasped Turner's arm he immediately sat on the bench.

I instructed Turner to stand back up and face the wall.  Turner complied, but began to scream irrational statements about how we were trying to see his "eggs."  I released [m]y grasp of Turner's arm.  Corporal Hernandez and Deputy Bennetts forced Turner's hands to the small of his back and I placed handcuffs back on Turner's wrists.

Once the handcuffs were secured on Turner's wrists, Turner was instructed to go to the back of the cell and face the back wall so we could safely exit the cell.  Turner again complied and began to walk towards the back of the cell.  Once Turner approached the toilet partition, Turner violently and suddenly turned towards Corporal Hernandez and Deputy Bennetts.  As Turner was turning Turner screamed, "Fuck this!"

At this point Corporal Hernandez took Turner to the ground.  See Corporal Hernandez' Deputy's Report for details.  Once on the ground, I secured Turner's upper torso by applying downward body pressure with my right and left hand, in belief that Turner may attempt to rise to his feet and again attempt to assault a responding deputy.  Corporal Hernandez applied downward pressure to the upper torso of Turner, while Deputy Bennetts secured Turner's legs.

Leg chains were summoned and Deputy Bennetts placed the leg chains on Turner's ankles.  While the leg chains were being placed Turner began to weep and apologized for not listening to our instructions and for his "stupid" actions.  Once the leg chains were secured, Turner was lifted to a seated position on the bench.  Turner was instructed to remain on the bench until the door was shut.  Turner compiled and the cell was secured.

While inside the holding cell you can observe Turner on video attempting to break the handcuffs off his wrists by utilizing the holding cell sink.  See SDSO Training bulletin dated 04/2005 (2).  Turner's actions were not successful in freeing his hands, but were successful in causing damage to the handcuffs.

>Corporal Hernandez. Deputy Bennetts and I removed Turner from the GBDF Processing Cell #4 and escorted him to GBDF Medical for evaluation. Turner was treated and evaluated by Nurse [] Rognlien-Hood (7001). Turner complained of pain to his neck and wrists. Nurse Rognlien-Hood cleared Turner for housing and scheduled him for MDSC at a later date. While in GBDF Medical, Deputy Bennetts took several photographs of Turner.
>
>Corporal Hernandez, Deputy Bennetts and I then escorted Turner to House 5, Cell 139 pending discipline without further incident.

(ECF Nos. 63-4 at 4-6; 83 at 8-10.)

## III. Standard of Review

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where the evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence are drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). Where the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477

U.S. at 322. A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. "[A] party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa, Etc. v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982); Fed. R. Civ. P. 56(c), (e).

**IV. Analysis**

    **1. Municipal Liability Under 42 U.S.C. § 1983**

The County moves for summary judgment as to Plaintiff's 42 U.S.C. § 1983 claim for municipal liability for the alleged violations of Plaintiff's Fourth, Sixth, Eighth, and Fourteenth Amendment rights. The County argues that it cannot be held liable because there is no evidence of an underlying constitutional violation and there is no evidence that a County policy or custom is responsible for any of the alleged constitutional violations. (ECF No. 63-1 at 3-5.) In response, Plaintiff argues that he was a victim of sexual abuse and excessive force by "County of San Diego, and there [sic] decision makers." (ECF No. 83 at 1, 2.)[3]

A municipality is liable under 42 U.S.C. § 1983 if it maintains a policy or custom that results in a violation of a plaintiff inmate's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). As explained by the Ninth Circuit:

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in

---

[3] In the FAC, Plaintiff alleges that he was subjected to sexual harassment and excessive force due to deputies' "conduct [that] conformed to County of San Diego official policy, customs and practices." (*See*, *e.g.*, ECF No. 6 at 3.) He further alleges that the County "had a policy that amounts to racism, deliberate indifference to Turner's constitutional rights. That policy adopted by Corp. Hernandez and other John Does on 12-3-2013 at George Bailey Detention amounted to, cruel and unusual punishment, denying equal protection under the law, and unreasonable excessive force." (*Id.* at 6.)

the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)). In reviewing the FAC and Plaintiff's opposition papers, it appears that Plaintiff is proceeding under the first and second theories, arguing that the County is liable under *Monell* because its policies and decision makers are supposedly responsible for the allegedly unconstitutional conduct at issue. (ECF No. 6 at 3; ECF No. 83 at 1, 2.)

Here, although Plaintiff alleges County policies are at issue, Plaintiff fails to identify any policy. Instead, the gravamen of Plaintiff's case is actions taken by individual Sheriff deputies against Plaintiff on a particular occasion, December 3, 2013. A plaintiff cannot demonstrate the existence of a municipal policy, custom, or practice based solely on a "single occurrence of [allegedly] unconstitutional action by a non-policymaking employee." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). And a plaintiff seeking to impose liability on a municipality under § 1983 ***must*** "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). Thus, as to this first theory, Plaintiff cannot survive summary judgment because, as the party with the burden of proof, he has failed to make a showing sufficient to establish this element. In contrast, Defendant submits evidence that "[t]here is no County or Sheriff's Department policy or custom that subjects inmates, including plaintiff, to excessive force, denial of equal protection or violation of Title 42 U.S.C. sections 1985 and 1986." (ECF No. 63-2 at 2, ¶4.)

With respect to Plaintiff's second theory – that the allegedly bad actors were decision-making officials whose acts may fairly be said to represent official policy – Plaintiff again fails to submit any evidence in support. The GBDF reports filed in connection with both parties' summary judgment papers identify the following correctional deputies as being involved in the use of force against Plaintiff on December 3, 2013:

Corporal Francis Gardiner, Corporal Miguel Hernandez, Deputy James Bennetts, and Deputy L. Garcia (*See* ECF Nos. 63-4 at 4-6; 83 at 6-10.) There is no evidence, however, from which a jury could reasonably infer that any of these deputies were decision-making officials whose acts may fairly be said to represent official policy. Thus, having analyzed Plaintiff's first and second theories of *Monell* liability, Plaintiff has not met his burden to show that there is a genuine issue of material fact from which a jury could reasonably conclude that the County maintained a policy, custom, or practice that resulted in the alleged violations of Plaintiff's constitutional rights.

Because Plaintiff has not put forth any evidence that the conduct at issue was the result of a custom, policy, or practice in San Diego County, summary judgment should be granted in favor of the County and against Plaintiff on any and all claims presented by the FAC under 42 U.S.C. § 1983.[4]

**2. Municipal Liability Under 42 U.S.C. § 1985 and § 1986**

Plaintiff seeks to hold the County liable for an alleged conspiracy under 42 U.S.C. § 1985[5] and for its alleged failure to prevent a known conspiracy under 42 U.S.C. § 1986. The County moves for summary judgment, arguing that Plaintiff does not have any factual support for the vague conspiracy alleged.[6] In opposition, Plaintiff points to § 1985(3),

---

[4] As a result, the Court need not address the County's alternative argument that it cannot be held liable because there is no evidence of an underlying constitutional violation.

[5] Section 1985 contains discrete substantive clauses. Section 1985(1) concerns preventing an officer of the United States from performing his or her duties. The first clause of section 1985(2) concerns conspiring to obstruct justice in the federal courts or to intimidate a party, witness, or juror in connection therewith. The second clause of § 1985(2) provides a cause of action if: "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws." The first clause of § 1985(3) provides a cause of action for a private conspiracy to deny equal protection of the laws. The second clause of § 1985(3) provides a cause of action for a conspiracy "for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." The third clause of § 1985(3) provides a cause of action for a conspiracy to interfere with federal elections.

[6] Defendant also argues that it cannot be a conspirator, but the law cited herein is contrary to this argument. *See*, *e.g.*, *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989).

references his right to equal protection, and seems to argue that Defendant is part of a "conspiracy to interfere with civil rights" and a "conspiracy to lie" related to the GBDF reports about the December 3, 2013 incident. (ECF No. 80 at 1, 3; ECF No. 83 at 3.)

To prove a violation under § 1985(3), a plaintiff "must show 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Orin v. Barclay*, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Further, "to prove a section 1985 conspiracy between a private party and the government under section 1983, the plaintiff must show an agreement or 'meeting of the minds' by the defendants to violate his constitutional rights." *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989). Here, Plaintiff has not alleged in the FAC or produced evidence that any alleged conspirators were motivated by racial or other class-based "invidiously discriminatory animus." *Orin*, 272 F.3d at 1217. Nor is there any evidence of a meeting of the minds between anyone and the County. Thus, Plaintiff fails to raise a genuine issue of material fact from which a jury could reasonably infer a conspiracy existed. Accordingly, summary judgment should be granted in favor of the County and against Plaintiff on any and all claims presented by the FAC under 42 U.S.C. § 1985.

Finally, "Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (citation omitted). A plaintiff can only state a claim under § 1986 if he establishes a valid claim under § 1985. *Id*. Here, Plaintiff fails to present evidence to support his § 1985 claim. Therefore, summary judgment should be granted in favor of the County and against Plaintiff on any and all claims presented by the FAC under 42 U.S.C. § 1986.

### 3. California Government Code, Sections 815.2, 815.6, 820, 844.6, 910, 912(c), and 950

Defendant moves for summary judgment on Plaintiff's claims that Defendant violated his rights under California Government Code, sections 815.2, 815.6, 820, 844.6,

910, 912(c), and 950.  The Court is in agreement with Defendant in its assertion that the County of San Diego is immune to state law-based claims of injury to prisoners under Cal. Gov't Code § 844.6.  Section 844.6 states "notwithstanding any other provision of this part . . . a public entity is not liable for . . . (2) an injury to any prisoner."  Cal. Gov. Code § 844.6.  Defendant has met its burden of establishing the absence of a genuine issue of material fact concerning Defendant County of San Diego's immunity from state tort liability.  Plaintiff fails to rebut this claim.  Therefore, summary judgment should be granted in favor of the County and against Plaintiff on any and all claims presented by the FAC under California state law.

## V. Conclusion

For the reasons outlined above, it is hereby RECOMMENDED that Defendant's motion for summary judgment (ECF No. 63) be **GRANTED**, and that the assigned District Judge issue an Order approving and adopting this Report and Recommendation.

**IT IS ORDERED** that no later than **August 11, 2016**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 18, 2016**.  The parties are advised that failure to file objections within the specified time may waive the right to raise to objections on appeal of the Court's order.  *See Turner v. Duncan,* 158 F.3d 449, 445 (9th Cir. 1998).

IT IS SO ORDERED.

Dated: July 21, 2016

*[signature]*
Hon. Jill L. Burkhardt
United States Magistrate Judge